J-S51038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: R.W.A., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B.A., MOTHER | : | No. 816 MDA 2019 |

Appeal from the Decree Entered April 17, 2019
in the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2567 of 2017

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED DECEMBER 12, 2019**

S.B.A. ("Mother") appeals from the Decree granting the Petition filed by

S.F. ("Paternal Grandmother") and M.F. (collectively, the "Petitioners" or

"Paternal Grandparents"), and involuntarily terminating Mother's parental

rights to her minor, male child, R.W.A. ("Child" or "the Child"), pursuant to

the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[1]  We affirm.

The orphans' court set forth the factual and procedural history of this

matter as follows:

> [The Child] … was born [i]n July [] 2012.  When the Child was first
> born, he resided primarily with his parents.  In November or
> December of 2012, []Paternal Grandmother[] filed a Petition for
> custody to ensure her visitation rights [concerning the Child,] and
> was granted a shared physical custody schedule.  On September
> 12, 2013, Paternal Grandmother's partial custody was expanded
> to three days a week.  As time progressed, the Child spent more
> and more time with [] Paternal Grandparents, eventually
> escalating to three weekends a month with the[m] [].

---

[1] Child's biological father, R.H. ("Father"), consented to the termination of his
parental rights.

The Lancaster County Children and Youth Social Service Agency (hereinafter "the Agency") received a referral regarding Mother's and Father's purported [illicit] drug use in 2016. Paternal Grandmother testified that in 2016[,] she was aware that Mother and Father were struggling with drug use in their lives and that she would frequently get calls requesting that [Paternal Grandparents] take the Child immediately. The initial drug test for Mother and Father came back invalid [for both parties,] while the second urine screen came back positive for opiates [for both]. At the time the Agency became involved, the family consisted of Mother, Father, the Child and Mother's two daughters from a previous relationship. The family left Pennsylvania during the assessment period so Mother and Father could enter a detoxification program in Florida. Mother testified that she went to a detoxification program in Miami, Florida for approximately 13 days in the summer of 2016.

The family was accepted by the Agency for services on July 12, 2016[,] and eventually returned to Pennsylvania. The plan developed for the family included goals for Mother and Father to "cooperate with Agency services, allow home visits and allow the caseworker into the home …[,] maintain stable housing[,] and have income to meet the children's basic needs." The plan also included a substance abuse goal requiring Mother and Father to submit to an evaluation and follow any recommendations. There was also a parenting goal and an education goal for the two older girls in the home.

The Agency caseworker described Mother as being uncooperative with her during the Agency's involvement. Mother had several urine screens that were invalid or unable to be tested; specifically, on May 26, 2016, the urine was clear and cold; on November 8, the urine was invalid for foul-smelling urine[,] and on November 21, Mother and Father both refused a drug screen.

The Agency caseworker testified that Mother subsequently left Pennsylvania after the Agency filed a Petition for emergency custody of Mother's two oldest children. When Mother left Pennsylvania with her two daughters, the Child did not go with her. Despite the issuance of an emergency Order granting the Agency's request for physical custody, Mother never attended any hearings and did not return her two daughters to Pennsylvania. The Agency eventually referred the case to the appropriate authorities in Florida when it became apparent that Mother was not returning to Pennsylvania.

In December of 2016, Paternal Grandmother filed a Petition for modification of the current custody Order for the Child on an emergency basis. Paternal Grandmother's Petition was granted and sole physical and legal custody was awarded by Order dated December 9, 2016. The Agency did not file a custody petition for the Child[,] as Petitioners had filed for and been awarded custody through the Lancaster County family court system. The Child has resided with Petitioners since December of 2016. Father did complete his goals and his case was closed for services on May 22, 2017. A custody conference was held on January 25, 2017. Mother attended this conference and was represented by counsel. Paternal Grandmother and Father also attended the custody conference in early 2017. A follow-up custody conference was … held on April 25, 2017. Mother was not present for the follow-up conference but Mother's counsel did attend. [Mother's father] testified that he believed Mother was in a drug rehabilitation program at the time of the conference.

On May 10, 2017, after granting Mother a period in which to object[,] and after receiving no objection, the court entered an Order granting primary physical and legal custody of the Child to Paternal Grandmother and partial physical custody to Father. Mother was directed to have no contact with the Child pending further order of court. [Mother's father] testified that Mother has not seen the Child since December of 2016.

Orphans' Court Opinion, 4/17/19, at 3-6 (citations to the record and footnote omitted, some capitalization altered).

On November 16, 2017, Paternal Grandparents filed a Petition seeking to involuntarily terminate Mother's parental rights and to adopt Child. Father informed the court that he would consent to the termination of his parental rights to Child, if Mother's parental rights were terminated, and he would consent to adoption. In January 2018, the court appointed Pamela Breneman, Esquire, to act as Child's guardian *ad litem*, who subsequently opined that termination of Mother's parental rights was in Child's best interest.

- 3 -

The court conducted hearings on Petitioners' Petition on June 13, 2018, and July 30, 2018.[2] Petitioners presented the testimony of the family support caseworker for the Agency, Father, and that of Petitioners. Mother presented the testimony of her father and mother, and that of Mother's daughter. Further, Mother testified on her own behalf.[3]

In Mother's brief contesting the termination, she objected that the court had failed to appoint legal counsel for Child, pursuant to 23 Pa.C.S.A. § 2313(a) (requiring a court to appoint counsel to a child in a contested termination of parental rights proceeding). Accordingly, in November 2018, the court appointed Angela Rieck, Esquire ("Attorney Rieck"), as legal counsel for Child. The court instructed Attorney Rieck to determine whether the record needed to be re-opened to present testimony on behalf of Child. Attorney Rieck thereafter sent a letter to the court stating that she had reviewed the hearing transcripts and met with Child, and that it was unnecessary for the court to re-open the record. Although Attorney Rieck questioned whether Child, who was then six years old, completely understood the proceedings, she represented that Child had clearly expressed that he wanted to remain in the care of Petitioners.

On April 17, 2019, the court entered a Decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2),

_____

[2] Mother lives primarily in Florida, and a number of hearings were postponed due to issues relating to service of court Notices.

[3] Mother did not attend the hearing on June 13, 2018, as she was in prison.

and (b). Mother thereafter timely filed a Notice of Appeal simultaneously with

a Pa.R.A.P. 1925 Concise Statement of errors complained of on appeal.

Mother now presents the following issues for our review:

1. Did the lower court erroneously terminate [] Mother's parental rights?

2. Whether the lower court failed to properly weigh the evidence in assessing whether [] termination was appropriate?

3. Whether the lower court failed to properly weigh the best interests of the Child by terminating [] Mother's parental rights?

Mother's Brief at 5 (capitalization omitted).[4]

We review these claims, which we will address simultaneously due to

their relatedness, mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

---

[4] While Mother stated her issues somewhat differently in her Rule 1925(b) Concise Statement, we find them sufficiently preserved for our review. Further, in Mother's brief, her arguments overlap between the various sections.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2), as well as (b). This Court may affirm an orphans' court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), as well as a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on section 2511(a)(1) and (b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

- 6 -

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Section 2511

does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child **and** refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (emphasis in original) (citation omitted); *see also In re Burns*, 379 A.2d 535, 540 (Pa. 1977) (discussing parental duties and stating that "[a] child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.").

With respect to Section 2511(a)(1), Mother asserts that there is no clear and convincing evidence that she had abandoned Child or demonstrated a settled purpose of relinquishing her parental claim. Brief for Mother at 25. Mother's argument rests primarily on her own testimony that she returned to

Pennsylvania from Florida and made diligent efforts, primarily with Father, to see Child. *Id.* at 25-26. Further, Mother asserts that she attempted to contact Child via phone several times, and mailed him a birthday card. *Id.* at 26, 31. Mother also relies on the testimony of her witnesses, including her daughter, to establish that Mother attempted to have a relationship with Child. *Id.* at 26.

The orphans' court, in addressing Section 2511(a)(1), stated in its Opinion as follows:

> Mother has done nothing to parent the Child since last seeing him in December of 2016. Any attempts by Mother's family to contact the Child are also irrelevant as it relates to the termination proceeding for Mother. Mother has failed to attend to the Child's physical or emotional needs. Mother is to be commended for seeking help with her substance abuse problems[,] but time cannot stand still waiting for her to complete her various treatment programs and incarcerations. Mother chose to flee Pennsylvania with her two daughters and not return after the family cruise in December of 2016. She chose to remain in Florida[,] with [her] two [daughters] remaining in her custody[,] at the expense of the Child, whom she left behind. Since Mother left, the Child's daily needs have been provided for by Petitioners. They sought counseling services for [Child]. They take him to the doctor and ensure he is safe.

> Mother was aware of where Petitioners lived, where they worked, [and had] their cell phone numbers and the telephone number of their residence. Mother had the ability to access the legal system to seek visitation with the Child and she already had a custody lawyer. Mother failed to use any of the information or resources available to her to see [Child]. Furthermore, she stood by and allowed Paternal Grandparents to care for [Child] without providing any support for him.

> Mother, for a period of at least six months prior to the filing of the [P]etition to terminate her parental rights, has failed to perform her parental duties as they relate to the Child. Petitioners

- 8 -

have met their burden to terminate Mother's parental rights under section 2511(a)(1).

Orphans' Court Opinion, 4/17/19, at 11-12 (footnote omitted). Additionally, the orphans' court assessed Mother's testimony, and opined that it was incredible and vague. *Id.* at 10; *see also id.* at 11 (finding that the testimony presented by Mother's parents was also vague). Our review discloses that the record supports the orphans' court's findings and determination, and we may not disturb its credibility determinations, nor do we discern any abuse of its discretion. *See In re M.J.S.*, 903 A.2d 1, 8 (Pa. Super. 2006) (stating that this Court may not reverse the credibility determinations of the orphans' court absent an abuse of discretion). Accordingly, we affirm on this basis in concluding that there was clear and convincing evidence to support termination of Mother's parental rights under Section 2511(a)(1). *See* Orphans' Court Opinion, 4/17/19, at 10-12.

Turning to Section 2511(b), the court must consider whether the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of Child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* When evaluating a parental bond, "the court is not required to use expert testimony. Social

workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Here, Mother argues that she desires to have the same bond with Child that she does with her other children, and that there was a bond between her and Child. *See* Brief for Mother at 23-24. Mother asserts that it was in Child's best interest to wait until Child comprehends the full impact of terminating Mother's parental rights, so that Mother could continue to improve her life and have a relationship with Child. *Id.* at 28, 39-40. Additionally, Mother argues that the court should have "appointed a counselor and/or therapist to assess the mother-child relationship and what was in the best interests of the [C]hild." *Id.* at 42-43.

In addressing Section 2511(b), the orphans' court credited testimony that Child's life was not stable prior to December 2016, particularly where Mother and Father used drugs in front of Child. Orphans' Court Opinion, 4/17/19, at 16; *see also id.* (finding that Child's life had been "unstable, unsafe and transient."). Further, the court observed that, after custody transferred to Paternal Grandmother, Mother did nothing to ensure ongoing contact with Child. *Id.* In Mother's absence, Petitioners took on the parental role in Child's life. *Id.* at 16-17. The court credited testimony from M.F., Paternal Grandmother's husband, that Child does not mention Mother. *Id.* at 17. Further, the court considered the guardian *ad litem*'s position that Child spoke very little about Mother, and that Child was very comfortable with

- 10 -

Petitioners, wherein there was a "genuine caring atmosphere in the home."

*Id.* Additionally, the court noted Father's testimony that Mother made no request to see Child. *Id.* The court further determined as follows:

> The Child deserves stability, permanence and safety. He should not be made to wait until it is convenient for Mother or Father to parent. Mother asserts that her rights should not be terminated as she is not calling for the Child to be removed from the home of Petitioners at this time and that an ongoing custody order could protect against any of Petitioners' concerns. But childhood is short and the Child deserves a stable home where his physical, emotional and safety needs are met. To allow Mother to try to inject herself back into the life of the Child now[,] or at some unknown time in the future[,] does not provide the Child with any stability or feeling of permanence.
>
> Based upon the evidence presented, and having resolved all issues of credibility, the [c]ourt finds … that Petitioners have established by clear and convincing evidence that the parental rights of Mother should be terminated as requested, and that the termination will promote and enhance the developmental, physical and emotional needs and welfare of the Child.

*Id.* at 18. Our review discloses that the record supports the court's findings, and we discern no abuse of its discretion in determining that Child's best interests are served through the termination of Mother's parental rights.[5]

Finally, Mother argues that the orphans' court erred when it appointed counsel for Child, Attorney Rieck, after the close of testimony. **See** Brief for

---

[5] To the extent Mother asserts that expert testimony was needed to evaluate the bond between her and Child, this is clearly belied by the law. **See In re Z.P.**, *supra*. Further, while Mother may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **See In re Z.P.**, 994 A.2d at 1121. By the time of the termination hearings, the credited testimony established that Mother had not seen Child since December 2016, which constituted a substantial portion of his young life.

Mother at 26-27. Though Mother acknowledges that the court gave Attorney Rieck an opportunity to review the record, Mother contends that the late appointment of counsel was insufficient, as Child's interests were not protected throughout the proceedings. *Id.* at 27. Further, according to Mother, "[b]oth the guardian *ad litem* and [Attorney Rieck] stated Child did not fully comprehend the effect of the termination of [] Mother's rights." *Id.* at 38-39.

The orphans' court rejected Mother's claims, reasoning as follows:

> [T]he court, out of an abundance of caution, did appoint [Attorney Rieck] for the Child and provided that attorney with the opportunity to review the record and open the matter for further testimony if counsel deemed it appropriate. In accordance with the court's deadline, [Attorney Rieck] informed the court that opening the record was unnecessary. Any possible error due to the delay in the appointment of counsel for the Child was remedied by allowing counsel ample time to review the record and reopen the matter if counsel deemed it necessary.

> The second issue raised by Mother … is the failure to consider the Child's lack of understanding of the proceeding, which is not persuasive. There is no statutory requirement that a child subject to a petition for adoption "fully comprehend" the termination of the rights of the biological parents. To require that a child fully comprehend termination would result in the unwarranted delay of adoption for years for all children. Under Mother's theory, an infant would wait years while it developed language and comprehension skills before an adoption could be completed. To make the Child wait in limbo for some unspecified amount of time until the Child could fully comprehend the implications of terminating Mother's parental rights only serves Mother's interest and is to the detriment of what is in the best interests of the Child. Childhood is short. The Child deserves stability and permanence during his childhood[,] and this stability has been provided by the Paternal Grandparents.

Orphans' Court Opinion, 6/11/19, at 2-3 (some capitalization altered).

We discern no error of law or abuse of discretion in the court's analysis. Moreover, the court complied with our Supreme Court's dictates in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (plurality), which held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. *Id.* at 183; *see also id.* (noting that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court). Here, the record reflects there was no conflict between Child's preferred outcome and his best interest, and the appointment of the guardian *ad litem* satisfied the requirements of Section 2313, regardless of the late appointment of legal counsel for Child. Further, there is no requirement that a child "fully comprehend" the impact of the termination of parental rights. Rather, the Supreme Court has determined that when a child is pre-verbal, and therefore clearly unable to "fully comprehend" the impact of the termination of parental rights, there is no conflict between the child's best and legal interests. *See In re T.S.*, 192 A.3d at 1092-93. Child was verbal and expressed his preferred outcome, which was to live with Petitioners. Attorney Rieck conveyed Child's preferred outcome to the court, and the court did not err by entering its Decree before Child "fully comprehended" the impact that termination of Mother's parental rights might have on him.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/12/2019</u>